Our next case for argument is 23-1790, Steuben Foods v. Shibuya Hoppmann Corporation. Counsel, how do I say your name? Al-Shadi. Mr. Al-Shadi, please proceed. Good morning, Your Honors. May it please the Court. Cook Al-Shadi with Barclay-Damon on behalf of the appellant, Steuben Foods. I'd like to start with the 591 patent. The district court erred in granting judgment as a matter of law of no infringement under the reverse doctrine equivalence in two primary ways that I'd like to address this morning. First, the district court narrowed the principle of operation of the claimant's second sterile region to require a continuously sterilized second sterile region. In doing so, he essentially limited the claim to preferred embodiment. Importantly, he rejected the defendant's attempt to do that at claim construction. And so, once the district court narrowed the principle of operation of preferred embodiment, it then compared the accused valve to the preferred embodiment to find non-infringement. And of course, this court's law is clear that infringement is assessed by comparing the accused device with the properly construed pipe. And so, by limiting the claim to the preferred embodiment through the reverse doctrine equivalence analysis, the district court erred in granting non-infringement. Now, there's a second reason the district court erred in the non-infringement. You've got a pen in one hand and a highlighter in the other, and you're pointing both of them all over the place. Lose them both. Sorry, Your Honor. Okay, go ahead. As another error the district court made, the district court allowed the defendants to put on a case that, to the jury, assumed that the claim was limited to preferred embodiment. And there's testimony from Dr. Glancy where he acknowledged that, in his view, claim 26 was limited to preferred embodiment. The district court found that the appellees had carried their burden of production and, in order to do that, because they had the burden, the district court had to find that there was no basis for the jury to find that it had not carried its burden. Now, even assuming that was correct, that they had carried the burden of production in the first place, there was still a question of fact in the battle of the experts on the principle of operation. Dr. Glancy, the appellee's expert... Counsel, what's your best case supporting your position that our DOE should not succeed? Should not succeed? I would point, Your Honor, to the SRI case, where it makes clear that the question is the claimed invention. And so when we talk about the claimed invention, we're looking at the construed claim. And so the district court had rejected the appellee's attempt to narrow the claim to preferred embodiment at claim construction. And that was correct. That was 100% correct. And so to then allow a defendant to, nonetheless, defeat the claim, or excuse me, the infringement claim, with an argument that was essentially rejected at claim construction, we would submit as error. And it would upend a lot of law from this court in that the accused device would be compared to the embodiment and not the claim itself. Now, just briefly on the question of the conflicts in the evidence on the principle of operation, the appellee's expert narrowed the claim to the preferred embodiment, whereas Dr. Cherone looked at the claim language and he said that the principle of operation is basically constraining the valve to two sterile regions. And so the jury was free to choose Dr. Cherone's view of the world. And when they did, the factual conflicts in the evidence between the two principles of operations needed to be drawn in students' favor. Thank you very much. Before I move on to the next, any other questions on the 5-9-1? Yeah, I think my colleagues may have some as well, but I'll keep going with you in the meantime. What effect, if any, would removing the RDOE defense to infringement have on the damages reported here? So if your honors would agree with the RDOE not being successful, it would be a math problem at that point. There were less bottles that were subject to a damages claim than, you know, for the 5-9-1s compared to the other two patents. But nobody, but the damages weren't broken out by patent. You've got three patents, and then you have a single damage award. So wouldn't we have to bake paper man for a new trial on damages? I would submit no, your honor, and the reason is neither side broke out the damages theory based on a per-patent basis. And what Dr. Blackburn had said, actually during the defendant's cross, was that, sorry, did you? No, no, keep going. Yeah, so what Dr. Blackburn had said during defendant's cross was for each of the three patents, he had determined that there was not a non-infringing alternative that was available that would have allowed them to recoup any of the profits. So in other words, the profits were at risk regardless of which of the three patents were infringed. Okay, this is a really helpful point. So you're saying that this case, as entirely presented by both parties, was an all-or-nothing proposition. If any one of the patents are infringed, this is the measure of damages, and there would be no need to send it back. Yes, your honor. Where was that addressed in any of the briefing? Or, like, was it in the J-Mall briefing, or? The per-patent issue? Yeah. I can't recall if it was in the J-Mall briefing, or I know we addressed it in our briefing. All right. That's page 66 of the blue brief. Yeah, but where did you tell the trial court this? That the damages were, you know, didn't need to be apportioned. It was the jury of the trial court, I'm sorry. Either. Either, okay. So there was some cross-examination testimony by defendants, actually, of Dr. Blackburn, where he had said that, in his view, and I'll give you the site, in his view, because he looked at each of the three patents, we have a bottle sterilization and a bottle fill. And so if you want aseptic bottling, you need sterilization, you need filling. And so regardless of which of the patents, because they, some covered sterilization, some covered filling, the same profits, bottling profits, would be at risk, because you couldn't do aseptic bottling without it. And that was a function of the way the non-infringing alternative case came in, that he wasn't, you know, made familiar with a non-infringing alternative that would allow HUD to recoup any portion of its profit, for example, if one patent was infringed but not another. All right, I'm going to set up as true, because you have 80 minutes, but on the bottles, and you should be finding that site. So if you find that site, bring it back home or bottle it. Move on, because you've got three patents you don't want to cover. Thank you, Your Honor. So quickly on the new trial. It's our position that the district court provided no record. Can you move on to the other patents before you move on to the trial? Because I think you have some problems with them, too. Yes, understood, Your Honor. So for the 188 patent, the question was whether there was substantial evidence of the way the functions were performed. Dr. Cherone, in our view, did address the way. He said, if we think about the context of the claim function, this is still involved. And what he said was, he compared the conveyor plate. Is this a means plus function claim? It is, Your Honor. So you're confined to the structure of the patent? That's correct. All right, and you're trying to get – the structure of your patent is not the same as theirs? It's not the same, but we are – Doctrine of equivalence. Well, literal equivalence, but yes.  So Dr. Cherone compared the conveyor plate to the neck rippers. He said they both hold bottles. Whether you hold it by the neck or you hold it by the bottom was an insubstantial difference in the context of filling bottles. And again, it's important to put it in the context of the function. With respect to the conveyor versus the rotary wheel, Dr. Cherone said the conveyor rotates in an oval around pulleys and it pulls the conveyor plate with it, holding the bottles. He compared that to the rotary wheel and said that the way the rotary wheel does that is to spin in a circle with bottles along its circumference. And so he did address the way the corresponding acute structures perform the claim function. To us, it looked like the apoletes disagreed, obviously. They put in their own evidence on it, but the jury cited the student on that. And there was substantial evidence of the way it was addressed. The district court hung its finding on the fact, or hung its ruling on its finding that there was no way it could be addressed by Dr. Cherone. Okay, so why don't you go to the 985? So the 985 patent, thank you, Your Honor. That was doctrine of equivalence. The issue there was whether the defendant's acute structure, so that is the flow meters and metering pumps, were equivalent to the intermittent addition sterile length to the bottle. Dr. Cherone explained that the function was to... This is the question, intermittent versus continuous, correct? Correct. Okay, so, you know, for me, Layman, just standing back, when you say something's intermittent, that seems different from continuous. You know, I know that we don't generally love this binary concept, but intermittent seems different than continuous. But then we've got cases like Deere, which says intermittent can have a flow that is so fast that it really kind of is the same as continuous. Is that right? Correct. And so is that your argument? That is the argument, yes. Okay. But wait, let me ask you this. I thought your device was intermittent. The patent is intermittent, that's correct. Right, so you're not trying to show the reverse, that theirs is intermittent and you require continuous, but their intermittent is so fast that it really is continuous. You have to show their continuous is somehow intermittent. The equivalent of intermittent, correct, Your Honor. And what Dr. Shoren explained is, if you think about the 985 patent, there's a little spoon dipper. There's a claim construction here, too. There is, and it was added in a non-continuous manner. And it was stipulated, right, the parties agree? That was a stipulated construction, yes. And theirs is not. Theirs is continuous. So how can that possibly be equivalent? So when you break it down, add it in a non-continuous manner, if you think about the 985 patent, it goes up and down very fast, this little spoon dipper. Right, so when you look at the embodiment, there's a spoon, it's a .5 milliliter. It goes up and down about every half second. And so it's shooting a blast of intermittent sterilant into the conduit, okay? Dr. Shoren said the function of that was to ensure a properly, or to ensure the correct amount of sterilant gets to the bottle, so you can have a properly sterilized bottle. When you look at the defendant's device, they're flowing continuously, but they are also monitoring a very careful flow of sterilant. And so we broke it down further. But it's not intermittent. That's the problem. You're looking at it from the wrong end. It's not whether yours does the same thing as theirs. It's whether theirs does the same thing as yours under the same claim construction. And so, sure, you've got expert testimony that says this performs the same function. You've got expert testimony that you get to the same result that is sterilized. How is it doing in the same way if yours is doing intermittent burst and theirs is doing a continuous burst? So I think that's the binary choice of the district court. No, no, but let's just assume sometimes a binary choice can be right.  Right? I mean, if your invention was, we do this intermittently, then intermittently is part of the claim. You put it in there for a reason. It has to be assumed to have happened in a way. If they don't do it that way, how do they infringe? Well, under the doctrine of equivalence. But how do you get something back under the doctrine of equivalence that you specifically gave away in the claim? Where in the expert's testimony does it say their continuous is performing the same way as intermittent? Again, you're right on function and result. There's no doubt it performs the same function. It's sterilizing, and it gets to the same result. It's sterilizing at the right level. But how is it the same way? So what Dr. Cherone said was that... Sorry, one second. To constantly monitor how much... 3107. And which of the subpages? 429. And he says at line 18, constantly monitor how much sterolin is based on its weight in bottles. And so that's the way... Wait, say that again. So constantly... The metering pumps and flow meters constantly monitor how much sterolin is on its weight in the bottles. And so that's...  The accused's machine. Right. So what? Why does that say this is intermittent? It says that the function, it's the equivalent way of performing the same function. We're not talking about function. I already gave you function and result. Where does he testify that the way of you doing it intermittently, or their way of doing it continuously, is the same way as you doing it intermittently? Because we've said over and over again, and it's in Doctrine and Equivalents, that it is element by element, and it is a very high burden to meet, and it's very strict, and you have to explain with specific evidence where it performs that the structure is doing it in the same way. And so the testimony I'm pointing to is Dr. Cherone explaining how the accused's machine does it, the way the accused's machine does it. And then over, if you look at the next page, 3108, PQPX 3108, sub 433, excuse me, 19 to 22. And he says that both are trying to guarantee the correct amount of sterility. That's super conclusory. That doesn't say this is the same way. That said, they're both trying to do... If you were pointing to that to say this has the same function or the same result, I might give you that. But that doesn't say anything about the fact that Continuous operates in the same way as Intermittent under this claim instruction. That was... The position Dr. Cherone took was that the way was the same. Where does he say the way was the same? I was trying to point it to you on 3107, the constantly monitoring. But that doesn't say this is the same way. It basically says it performs the same function or the same result. Understood, Your Honor. You just don't have enough testimony here to support that. If I... That's my reason in this testimony, that there's no testimony to support way, then the District Court's decision on this path is right. Isn't it? Yes. If Your Honor finds insufficient testimony of the way, then you're right.  Okay. Briefly address the new trial issue, please. Yes. Sorry. Is that okay? Yeah. I was going to ask something similar. So do that and I may have a follow-up. Okay. So very, very quickly... I'll try to be quick. The District Court didn't provide a record for a new trial and then deliver your damages. When it comes to looking at the opinion, there's just no record there for this Court to affirm the basis for the new trial. And so when it comes to validity, though, there was actually a waiver below and that should extend, we submit, to the new trial request because they were both based on the sufficiency of the evidence. And that's the Greenleaf case. And so Applebees didn't really have an explanation other than to say, well, because we argued sufficiency of the evidence, a for sure, we argued against the great weight of the evidence. They're really two different standards. It's not one satisfies the other. One looks at, was there sufficient evidence? The other looks at, assuming there is sufficient evidence, do we need a new trial for avoiding a miscarriage of justice? But also talk about whether or not there should be a new trial on infringement depending on how we come out on the J-Law on the various panels. Well, I think if Your Honors were to find non- reverse the finding of non-infringement, I don't see a basis for a new trial in the District Court's opinion on the issue of infringement. It seems to say that if there's a reversal, you should give a new trial, but there's never a finding that there would be sufficient evidence and it would be contrary to the great weight of the evidence and we have to avoid a miscarriage of justice. So it's really a matter of just there not being a record of it. Okay, but what about damages? On the final page of the red brief, I think it's page 71, they say there would have to be, send this back to the District Court for damages at a minimum. I mean, certainly the District Court gave us no bases in which I can review his decision to grant a new trial damages. That's done. Like, there's no bases. I can't review nothing. You know, and that's what we have. There's nothing. But you started off by saying if you found any one, because your expert argued basically any one of these would amount to the full verdict on page 71 of their brief, which I thought I remembered so I just kind of looked, they say no, that you have to send it back because they made arguments to the District Court on damages, which the District Court didn't actually address because he found non-infringement. So wouldn't we have to send this back for the District Court? I mean, maybe I don't, maybe I'm making the new trial damages, his decision that there should be one because he gave no bases for it. Right. You know, and say, look, you've got to give more explanation at a minimum so we can review it. But they suggested that they made arguments on damages below, which he has yet to address because of the way he did resolve infringement. Right. What do you have to say about that? So he obviously didn't address it, but I would submit that their chance to explain and provide a record for your honors was in the red brief. And what they said was essentially high level that was an apportionment issue. And so they could have presented a record to your honors, but they didn't. And so to, I guess you're not saying confirm, but to vacate the new trial and then have the judge explain the reasoning and then go through a whole new trial. How could we possibly, if we find, if we affirm him on one or two, but not all three of his non-infringement findings, affirm the damages, what is there for us to say that we know that the jury or the judge, as a matter of law, would have found the same damages based upon less than all infringement patterns? We did explain in our gray brief why we think that's the case. And so I would submit... Well, you're talking about waiver. I mean, on their part, the gray brief is way too late for you two. I mean, you made a nod to it in your red brief. I want to know, will any of this be told to the jury and the judge and specifically laid out so we know what the judge would have done in the case of some of the patents we're going to find he was wrong on non-infringement, but maybe some of them we're going to find that he was right. So the Jane Wall briefing did have damages arguments. I can't recall, Your Honor, right now. And he didn't talk about any of that. So why don't we send it back to him to decide what he needs to do? Look, if you win on all three non-infringements, it's easy, right? We just reinsert the jury, Bernie. But if you don't, then why are we trying to sort out in the first instance what to do instead of just send it back to him and say, look, you were right on one or two of these, but you're wrong on the other one or two of these, and let's figure... You need to figure out if the damages are the same or different. Our argument is that there wasn't a record. We explained that. I thought it would incumbent upon athletes to do it. I see Your Honor's point. If you're not comfortable with making the findings and don't think there's a record, I think the law we cited is that there should have been a record made, and there wasn't, and so after this long litigation to send it back and having to try to figure out the damages and then if there's a new trial, there's a lot of different permutations that could happen. If Your Honor is more uncomfortable with that, then... Okay, well, we wait to hear your time, Officer. We have a lot of questions. Let's hear from you as we're closing counsel. Okay, thank you, Your Honor. I appreciate the time.  May it please the Court. The jury verdict in this case was fundamentally flawed because Steuben repeatedly elicited fundamentally flawed testimony from its expert on all three of the patents. Did you make some sort of dollar motion in front of people in this? Because I don't remember that. We did not make a dollar motion. Okay, why don't you just get to reverse doctoral equivalence? Because you're starting out on some generality that seems untethered to the briefs to me. So just start with the issues. RDOE, tell me why the district court judge was correct in granting Jaymall on that. The district court was correct to grant Jaymall on the RDOE because everything the patent has to say about the second sterile region at issue is found in column 14, which is appendix 63. And at the top of the column, it begins by explaining the problem that the patent is trying to solve. The problem is expressed in figures 23 and 24 of the patent, which are reproduced in a number of places, but among other places on page 52 of the red brief. And the key... Has the federal circuit ever found reverse doctrinal equivalence to apply? Well, the federal circuit has certainly heard cases involving... I didn't ask you that. Have they ever found reverse doctrinal equivalence to apply? This court has never affirmed a judgment of non-infringement based on the reverse doctrinal equivalence. That's correct. And have we, on many occasions, referred to it as something like an anachronistic doctrine that is of limited value? These are actually dark holes from my cases, so I think you have kind enough to say yes. The court has, from time to time, disparaged the doctrine, yes, but it is a doctrine that is in Supreme Court precedent and that has never been overruled. What makes you think so? What makes you think that it survived the 1952 Patent Act? Your Honor, I think that it survived the 1952 Patent Act substantially for the reasons given in Warner-Jenkinson. But Warner-Jenkinson was just addressing direct infringement, and this is a defense, not an affirmative proof. This is a defense to infringement. Well, I think that the Supreme Court's cases on this issue, going back to Graver Tank and even before then to the Westinghouse case, treat the two versions of the doctrine that you're referring to as two sides of the same coin, just as... Yes, but then, you know what they did? They came along in 1952, and Congress said, you know what, there's infringement, and they didn't say it had to be literal, so DOA could still be in, and the Supreme Court said it's still in. And then they went further, and they said, no defenses to infringement that aren't in Title 35 survive. All defenses to infringement are in Title 35. I don't see reverse doctrine of equivalence anywhere in Title 35, and that's Congress by statute. So Congress, you do agree, don't you, that Congress could decide to say reverse doctrine of equivalence is a judgment exception is no longer good law. Congress could do that, couldn't they? Congress could certainly pass a statute repealing the reverse doctrine of equivalence. Why should I interpret their statement that all defenses to infringement are now found in Title 35 as not having done that, because reverse doctrine of equivalence, it was listed in Title 35. Well, again, as we said in our briefs, I think that the Arrow case makes clear that the 1952 Act did not obliterate all of the judicial glosses that were in place for the preexisting statute. The Arrow case doesn't say anything about defenses, does it? It's about affirmative rule of infringement. It doesn't say anything about defenses. It doesn't say all defenses that were judged may continue to exist. It only speaks to the affirmative rule of infringement, doesn't it? I think that the principle underlying the decision, though, Your Honor, is that Congress legislates against the background of judicial decisions. And in this case, the judicial decisions for now for more than 100 years in the Supreme Court have recognized the doctrine of equivalence both as an offensive doctrine to expand the scope of the claims when they're instituted in Congress. What do you think our DOE reaches that 35 U.S.C. 112 does not? Well, you know, it's often... There may well be 112 issues with these plans that are not currently before the court. I don't think that... Why didn't you raise that? This is what's frustrating me. This reverse doctrine of equivalence case you've admitted, we have never used to sustain a judgment of non-infringement. Why did you take the district court out on this limb when you could have gone after this problem with claim construction arguments, 112 arguments, and preserved them and appealed those to us? Well, we did make a claim construction argument, and we lost on it, but certainly an alternative ground for... It's not in your brief. No, but I don't believe we could have cross-appealed it because we won below, so we would not be expanding the judgment. Could we have an alternative ground for affirmation? We did give you an alternative ground for affirmation, Your Honor. It's in the brief, of course. What we say is that... Where in your brief does it argue that the district court's claim construction was wrong, or the district court was wrong on 112? We have an entire section devoted to the construction, starting on page 60, 61, 62, 63, about the proper construction of the term. So we absolutely preserved the alternative claim construction, and we do, of course, think that the district court did not construe the term correctly, but the reverse... But, you know, we would face a trial with a construction we have to live with. The reverse doctrine of equivalence is, I would submit, a safety valve that applies when you have a broader construction that is justified by the specification, but we certainly think, and the court has the option... Did you put this claim construction argument in your Jamal motion? Yes, of course we did, Your Honor, and we also put it... Where is it in your Jamal motion? In the Jamal motion, I'm going to ask my colleague to get the exact citation to it, but importantly, the most important thing is it was in the claim construction portion. In fact, let's see. The claim construction is memorialized at Appendix 6800-6801, and the post-trial brief is Appendix 5236-04. So, you know, we didn't do a full-throated rehash of the claim construction argument post-trial, but I think this isn't... Did he address this in his Jamal, in his claim construction issue? It's in your brief. I obviously missed it. There's so many arguments in his brief, and I read it, and I skipped over it. Did he address the claim construction argument in the Jamal motion? Not in the Jamal motion. He rested on reverse doctrine. No, he construed the claim and, you know, indicated no interest in revisiting his construction, and so we argued the construction that we were given, but I think this is an unusually clear case, Your Honor, where, again, if we go to Column 14, I really do urge Your Honors to look at Figures 23 and 24 of the patent because they describe with uncommon clarity the problem that the patent is trying to solve. The problem is that when... Let's just assume that I am never going to apply reverse doctrine to this case. Does that mean, based upon this claim construction argument that you say you preserve, we should still submit it back to him to look at non-infringement of that patent if we disagree with him? I actually think that given the record that you have, if you were to construe the claim as we are suggesting, it would not be necessary to remand. You could actually affirm because there is no factual basis for finding infringement under the construction that we've proposed. So the bottom line is the claim construction question is a question of law, so there's no reason to send that back. We can decide it. Correct. We can either affirm the claim construction he adopted or we could reverse it in your favor, which would result in the same outcome on that patent. Why don't you get on to the next patent because you've got a lot of ground to cover. Thank you, Your Honor. With regard to the 985 patent... What happened to the 188? Did you skip one? No. I can take them in whatever order you're having first. So with regard to the 188 patent, so this is a 1126 limitation, and so there's a bargain that the patentee strikes, right? By using functional claiming, the patentee limits the structures that can be accused of infringement to those disclosed in the specification and their then-existing equivalents. And so what we have here is the situation where they have one rather idiosyncratic set of structures, which is a linear conveyor with a 2-by-6 conveyor plate that's holding roots... Dr. Sharon gave testimony about them performing, you know, in literal infringement for means plus function, is the same way, substantially, I mean, the same function, substantially the same way in result. And he presented testimony clearly on that. So why does that not support a jury ruling? Respectfully, I disagree that he gave testimony on that. What he said was not that they do them the same way. What he said was all that matters is that you do it... They don't have to go the same way. They're doing substantially the same way. He also did not... They don't have to be the same way. He also did not testify to that, Your Honor. What he said was, and you will find this at, for example, Appendix 3101, 02, and 03, there's a series of questions where he says how you hold the bottles doesn't matter. Filling the bottles at a rate greater than 100 bottles per minute is all that matters. He said the same thing about straight line versus circular motion. It doesn't matter how you move them as long as you're going at 100 bottles per minute. He says the same for continuous versus intermittent. Doesn't matter if it's continuous or intermittent as long as the bottles are going at 100 bottles per minute. And that, if accepted, would obliterate the very limitations that 112.6 is supposed to put on functional claiming because what he says is essentially any structure under the sun that moves at 100 bottles per minute is going to be equivalent to the corresponding structure in the patent. And that, if accepted, I think, would make 112.6 a dead letter. We have a whole series, and the district court, of course, found the undisputed differences in the operation of the systems. One of them is linear. One of them is rotational. One of them holds the bottles in batches and processes them intermittently. The other one moves continuously and holds one bottle at a time. The neck grippers are able to accommodate bottles of different sizes. And so for us to reverse his non-improvement finding, we have to determine that all those structural differences are insubstantial. Are insubstantial. You would have to find that, or you would have to find some testimony supporting a jury conclusion of that, and I don't think you're going to be able to find it on this record. Because his testimony is pretty high-level and conclusory that they just accomplished the same result. He says that the function is filling in 100 bottles per minute, and anything that moves at 100 bottles per minute is going to be equivalent in his view. Can you point me to where that is? Sorry? Yes, this is 3101-02. And what's the subpage in line number? Give me just one second. So, for example. What about 406, 3101, which is where you just pointed us. 1406, line 18. This is their expert. So these hold it by the neck like that, or the conveying plate and the patents hold it from the bottom. Whether you hold it this way or that way, it's not going to limit whether you can achieve 100 bottles per minute of filling. So that's why it's insubstantial, whether you hold it from the neck or you hold it from the side. So he is saying, isn't he, that that doesn't just go to resolve. He's saying it does not matter holding it here or holding it here. It's the same thing. There's no difference in that way. It's not going to result in any different outcome. No, but respectfully, Your Honor, I don't think that's right. I think what he's saying is it doesn't. He says when the question is, is there a substantial or an insubstantial difference between the accused structure and the corresponding structures in the patent. We have a whole litany. It's not just the one. We have a whole litany of circular and intermittent and from the top and from the bottom and all of the differences. And he has to say, he has to give some testimony that the difference is insubstantial in the way that the function is carried out. And what he says instead is anything that goes 100 bottles per minute is going to be an insubstantial difference in his view. See, that's not the function. That's the result. And that goes to structure. And that's what 112.6 is all about. Do you have the same structure performing the same function? Function here is filling. It's not 100 bottles a minute. Result is 100 bottles a minute. That's part of the structural analysis under 112.6. That is part of the way in the result portions. I don't understand. Actually, I think that the filling at 100 bottles per minute actually is the stipulated function for this element. I don't think there was ever an argument made that it was anything other than that. But again, I think the point is that when you have structures that are so fundamentally different in so many different ways, this Court has repeatedly said that in order to tab in the range of equivalence, in order to preserve 112.6 or in the normal equivalence sort of situation, in order to prevent the claim from sort of... to preserve the all-elements rule and to have the claim have an invention-defining function, you need to impose limits on this. And the Court has repeatedly said that linear motion is not equivalent to circular motion. So is your interpretation of these sentences you're looking at the problem with it is he's saying that it doesn't matter which way you hold it because it all gets to the same 100 bottles per minute. And that's the wrong inquiry. The inquiry is are the structures similar enough that they're insubstantial, not whether the structures end up with the same result and therefore the differences are insubstantial. That's exactly right, Your Honor. I agree with that. And I think it's even more clear on the next page, 3102, and on page 410, starting at line 12. The question is, in the context of filling in 100 bottles a minute or more, 100 bottles or more per minute, does it matter whether the bottles are moving in a straight line or in a circular fashion? And he says no. I mean, you know, as long as you're... if the claim were directed toward new ways of transporting bottles, then maybe they would be substantial. But in terms of filling at a rate of 100 bottles per minute, you can do it linearly or rotary. But that doesn't answer the question whether when you do it that way, is it substantially different? Yeah. Exactly right. And then, you know, the same question goes on on 3103. We have a similar exchange about intermittent versus continuous. Okay, when you're out of time, I'd really like you to cover some of your other issues. I want to jump into the new trial. Can we quickly touch on this intermittent versus continuous? Of course. Okay. Can you distinguish for us and address, like, the DEER or the EPSOS cases in particular in terms of how you're thinking it should come out on the 985 day? Yeah. So the EPOS case was different in a couple of respects. And I think the main thing that we had there was the district court, you know, this court said that the district court had shortcut its analysis. So we had a two-line, back-of-the-hand treatment of the equivalence issue. And we had a situation in which there was proffered expert testimony in the form of declaration that the district court had failed to consider. And so the key differences here are that, first of all, we have a multi-page treatment of the issue that engages with the expert testimony that was offered. And the expert testimony that was offered on this point, similar to what we just saw in the 188 patent, was that, essentially, it doesn't matter whether it's continuous or intermittent. All that matters is that the right amount of sterilant get to the bottles. And I think that the testimony on that issue was even clearer than we have on the 188 patent. I would direct the court to appendix 3111 and 3112. 3111 at page 446, and 3112 at page 447 of the transcript. Because what you'll find is that he said that whatever measures the right amount of sterilant is going to be equivalent to the intermittent amount of... the intermittent adding of the sterilant to the conduit. So he admitted it was continuous, and he just ignored the difference. He admitted it was continuous, and he said, it just doesn't matter if it's continuous or intermittent. They're the same thing. And I think in the context of the stipulated claim construction, which says continuous means not intermittent, that's a big stretch. And I also think, if your honors look at the claim itself, right, the supposed point of invention of the claim is that there is a second supply of sterile air that is continuous to which sterilant is added intermittently rather than continuously. And so we have a juxtaposition of the concepts of intermittent and continuous throughout the claim, throughout the stipulated construction, and then what we don't have is him saying that continuous and intermittent are equivalent. And, in fact, on the very portion of the... I think you meant to say intermittent. The claim construction is not continuous, correct?  You said it the opposite way. I apologize. And it just threw me for a loop. Now I apologize. I mean, it's hard to keep all these things straight. So I just want to make sure. Okay, I really want you to get on that new trial before you're way out of time. So I'd like you to just address that. I'm in a little trouble. I understand the district court's rationale for the new trial on infringement because it paralleled his articulation of all his j-mal motions. But he also threw in sort of ad hoc new trial on validity of damages, and I'm having a little trouble reviewing that because there's nothing I can review. He gave absolutely no explanation. I agree that the district court was exceptionally concise on the... That's a really polite way of saying it. Your Honor, I think that it's clear from the district court's opinion that the trial was a bit of a mess, that there was... We had all kinds of different equivalents. Well, he ended up with the right DOE, so I say that's a yes. Well, we ended up with lots of different equivalents. We ended up with erroneous statements in claim construction about the disclosure dedication doctrine that confused... You're not helping me answer the question. I think that, Your Honor, if Your Honor has doubts about the basis for the new trial... How could I not have doubts? It would be appropriate to... How could I not have doubts? I agree that there was not an articulated basis on that specific issue, but I think the appropriate thing for the court to do in that circumstance, since it is clear that the district court thought that a new trial was appropriate, and under Rule 59, the district court has authority, even sua sponte, to order a new trial in the interest of justice, the appropriate thing to do, should any part of it be remanded, would be to send... Or should the new trial question still be a live issue after Your Honor's done with it? I'm just curious why we would have to have a new trial if... Let's just assume, hypothetically, that we affirm one or two of these non-infringement findings and reverse... Let's just assume we're going to reverse an RDOE. I think we'll dig in. But if we reverse that, why do we need a new trial, though? Because you're going to have a finding of infringement if this is... And putting aside that claim construction issue that I didn't focus in on, let's just assume that we reverse RDOE and sustain a jury verdict and flip the other... Or... And affirm on the other two. Why do we need a new trial on everything? Why isn't it just send it back to look at damages? Well, again, I think that the district court has conditionally granted a new trial on everything. He didn't explain any of it. Well, but he did explain... He did explain what he thought were the fundamental problems with the infringement case, for example. But that's a different issue. Just ignore that. Ted, from the outset, he explained that.  I want to know his validity. He told you you waived JML on validity. Why in the world would I send it back for a new trial? Well, under... Well, because we did, of course, move for invalidity at summary judgment and preserve... It's not relevant to whether you waived it. Well, I think it is relevant to whether it's waived because he, in fact, said when we cited, for example... In fact, I don't know that... I'm not sure that Dupree Younger had yet been decided by the Supreme Court. But when we said that it was... That preserving the issue at summary judgment was enough to preserve it for appeal, he said, yes, I agree that's enough to preserve it for appeal, but it's not enough to preserve it for JML. And so if you want to take up on appeal someday when you have a judgment on appeal, that's fine. That's set forth in his... But you didn't take it up on appeal. No, but we didn't have a judgment of validity. It's a 54B partial judgment on infringement only. So there's nothing to appeal. He said you waived... First off, there is something to appeal. The jury found the patent valid, right? The jury didn't find the patent valid. All three patents. Yes, ma'am. Okay, so jury found all three patents valid. You, for JML, did validity, and he said you waived that. You don't get it. Yes, ma'am. Did you appeal that? No, because, again, there was no... There was no judgment. There was no basis for us to cross it. Yes, there was. You could have said, this recent Supreme Court case means that we didn't have to re-raise legal questions that were decided at summary judgment. Again, this provides an alternative ground for affirmance of the district court's opinion because these patents are invalid. You could have put that in your brief. I understand there's page limitations, but you get a lot of pages from us. There's nothing that would have prevented you from saying these are alternative grounds for affirmance. So, again, I think the district court entered a 54B judgment of non-infringement and nothing else. So, for example, we also had very serious damages arguments involving the entire market value rule, which the district court expressly declined to address and did not rule on. So if you see it, you'll find that at page 27. Wait, you're talking about non-infringement. You did not proclaim this for a deviated validity in this case. So are you telling me there's no final judgment here? I'm telling you there's no judgment on the invalidity issue in this case. Did you file counterclaims? Your Honor, I honestly do not recall. This case was filed in September of 2010. Why was there only a 54B judgment? Just kind of backtrack and tell me that. Was that something that the parties were requesting? Can you just give me more background there? You know, I think, Your Honor, that the district court thought that there was reason for a new trial, that the trial was problematic. However, he thought that he could resolve the infringement issues as a matter of law and did that, and having done that, did not think it was necessary to go on to consider any of the other matters that were before him. I think I'm really baffled now because if these invalidity claims weren't just somehow defensive to infringement, if there are invalidity counterclaims, we don't have jurisdiction. There's not a final judgment. But you have jurisdiction under Rule 54B. No, we don't. Do you know whether there are counterclaims? I do not, Your Honor. Do you know whether there are counterclaims? My recollection is that there were, filed by Shibuya, but not by, so one of the two parties, yes. Did he certify it under Rule 54B, and we accepted it? Or he separated it, but it's still, even if he separates it under Rule 54B, we don't have to accept that if it's not a final judgment. You can appeal infringement when it's a final, all-but-void account. This is a hot mess. And just to be clear, we're going to go back and look into this, and you all should go back and look into this. If we feel that it's necessary to request briefing from the parties, if we feel that we can perfect jurisdiction by going back to the district court and obtaining a conditional dismissal, we will suggest as much so that the whole case doesn't have to start over from scratch. So we will all go back and take a look at this. If we want more briefing from you, we will ask for it. I've got one more question before you sit down. Can you address this whole all-or-nothing proposition with respect to damages? There was a discussion that Chief Judge Moore had with opposing counsel about that, that it would basically be the same when there was the finding of infringement of just one versus multiple patents. I want to know what your position is on that. So our position is that we raise, as part of our J. Moore briefing, objections to the verdict on damages because, based on the entire market value rule, simply put, this is a very long production line. The sterilization and filling of the bottles portion of the line is only a small part of the line. You also, for example, have to have sterile food because people aren't going to find it. Okay, just answer the part of, let's say we only find reversal on, let's say, one patent. You can use the hypothetical that Judge Hughes previously provided. I want to just understand what would need to happen with respect to damages. You would need to remand the case to the district court for the district court to consider, in the first instance, the damages questions that were presented on J. Moore and whether any sort of remittiture or alteration of the damages verdict would be appropriate, or whether a new trial on damages is also necessary. How much did he hold before? All right, you got six minutes, Dr. Ball, because he went over. You don't have to use all six, but you do have to. Thank you, Your Honor. First, I wanted to give you the site that I told you I would give you. That's APTX 3146. And in that portion of the testimony, Dr. Blackburn was asked, essentially, did you, portion per patent, and what he said is, based on the evidence he saw, he saw that the full profits were at risk for each of the three patents, and so there was no difference between the patents when it came to that issue. And so there is some testimony in the record on that, actually from defendants' profit. If I could touch briefly on the claim construction question. The district court got that claim construction 100% correct. And we cited, it's at page APTX 6122. There were other claims, Claims 1 and 16, that were cited continuously sterilized. Claim 26 doesn't. And so what defendants are saying is that Steuben narrowly defined second sterile region. They don't identify disclaimer. They don't identify lexicography. It was a claim differentiation issue. The judge got it correct, 100% correct in our view. It's briefed in, between their red brief and our gray brief. And so I think you'll see that that's a very supportable and correct on construction. Can you respond on this 54B judgment issue that you were discussing with opposing counsel, please?  So defendants asked for 54B. We resisted it. They proposed the judgment that was entered. My recollection, and again this wasn't in the briefing, so this is my best recollection, was that we had said that the judgment of validity, or no in validity, should be included so that they could appeal it, including the waiver. They chose not to. So they asked the district court to not put that in the judgment, again, to my recollection. And so the district court agreed. He didn't explain why. There was a joint letter that went in, as I recall. But at the end of the day, I would submit if they wanted to appeal that, and they wanted to challenge that finding, they could have asked it in the judgment or filed the prosecutor. One of the two. There is a patent that has stayed below. It's an 013 patent. We prevailed in a re-exam, so that was part of the reason for the 54B was there was another patent on this case. Are you suggesting that because they didn't put it in the final judgment that they somehow agreed to dismiss those claims or the like? I wasn't. I think the problem is whatever that judgment said is not a final judgment if it didn't dispose of the counterclaims. Well, I think because it's a 54B judgment, it's a partial judgment that allowed... It still has to be a final judgment, and it has to meet the right criteria for a 54B judgment. We're going to get briefing on this. Don't waste your time on this. Okay, why don't you touch upon your substantial evidence for your 1126 fiends post-functional claim.  Dr. Schroen, I think it's Dr. Schroen's testimony. How do you focus on what you think he offered to explain why it's not just identity of function but why the structures themselves are substantially similar? What is the substantial evidence for that? So, Dr. Schroen explained that they both hold the conveyor plate.  Oh, sorry. APPX 3101 is exactly where your Honor is looking for post-functional. Okay, where on 3101? 406? 406, correct. And so he explained that the conveyor holds the bottles by the bottom. That's the way. He explained that the neck gripper holds the bottles by the neck. That's the way. And he said in the context of the filling function, and so it's important to remember it's got to be in the context of the claim function, he's saying the difference between holding a bottle by the bottom and holding it by the neck is insubstantial when we're talking about the function of filling. And so what he was doing there was following the IMS case and putting it in the proper context of we're not talking about a claimed invention that's directed to new ways of moving bottles. Okay, but this isn't like, for example, the function isn't supporting the bottle while it's being filled. Correct. Because then holding it from the bottom or the neck, there might be some functional difference. Exactly, Your Honor. And that's what I think, that's what Dr. Schroen was explaining there in the portions that Mr. Rosenthal cited. And so we think that there is substantial evidence as we've cited in there. I don't necessarily have anything else that I needed to say.  Thank you so much. Counsel, you are here to state your definition.